The *denial* of a defendant's motion to withdraw a guilty plea is reviewed for an abuse of discretion. *United States v. Hunt*, 205 F.3d 931, 936 (6th Cir. 2000) (citing *United States v. Pluta,* 144 F.3d 968, 973 (6th Cir. 1998)). The district court, however, did not *deny* Defendant's motion. Rather, the district court *granted* it. Defendant challenges his own success. In essence, having lost at trial, Defendant now seeks to avoid the harsh reality of his own bad judgment in withdrawing his plea. Such gamesmanship should not be countenanced on appeal. For this reason, we find that the district court did not err in granting Defendant's motion to withdraw the guilty plea.

### Conclusion

For the reasons stated above, we **AFFIRM** Defendant's convictions.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0243P (6th Cir.)
File Name: 01a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
　　*Plaintiff-Appellee.*

　　*v.*

CURTIS N. MACK,
　　*Defendant-Appellant.*

No. 99-4177

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00162—James L. Graham, District Judge.

Argued: May 3, 2001

Decided and Filed: July 26, 2001

Before: SILER and GILMAN, Circuit Judges; DUGGAN, District Judge.

---

### COUNSEL

**ARGUED:** David J. Graeff, Westerville, Ohio, for Appellant. Daniel Allen Brown, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

---

*The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

**ON BRIEF:** David J. Graeff, Westerville, Ohio, for Appellant. Daniel Allen Brown, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

————————

### OPINION

————————

PATRICK J. DUGGAN, District Judge. On May 28, 1999, a jury found Curtis N. Mack guilty of three counts of armed bank robbery, 18 U.S.C. § 2113(a) & (d), three counts of using or carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c), and six counts of unarmed bank robbery, 18 U.S.C. § 2113. Defendant has filed a timely appeal. For the reasons stated below, we **AFFIRM.**

### Background

Defendant originally accepted a plea agreement under which he pled guilty to two counts of armed bank robbery and one count of using a firearm in connection with a crime of violence, in exchange for which all other counts of the indictment were to be dismissed. Defendant subsequently moved to withdraw his guilty plea. According to Defendant, he accepted the plea only because he believed that he would not receive a fair trial on account of his race, and because he felt overwhelmed by the forces against him. After a hearing on April 15, 1999, the district court granted Defendant's motion and the matter was set for trial on May 24, 1999.

On May 7, 1999, counsel for Defendant filed a motion to withdraw, asserting that Defendant had lost confidence in him. A hearing was held the same day. During the hearing, the district court specifically asked Defendant whether he had lost confidence in his attorney and wanted him to withdraw. Defendant responded:

I want him to continue with my case. I just need to - - I need to maybe see him more. I have never doubted his abilities to represent me. It's just that I had some aspects

of justice. *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999); *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

We are satisfied that the district court did not abuse its discretion in denying defense counsel's motion to withdraw. Defendant himself never moved to substitute counsel. Furthermore, when asked during the hearing whether he wished for defense counsel to continue on his case, Defendant specifically stated: "I want him to continue with my case." Defendant further stated that although he wished to see defense counsel more, he "never doubted his abilities to represent me." Although defense counsel "inferred" that a breakdown in the attorney-client relationship had occurred, Defendant himself dispelled any such inferences during the hearing.

As we have previously stated, "[t]he need for an inquiry will not be recognized . . . where the defendant has not evidenced his dissatisfaction or wish to remove his appointed counsel." *Iles*, 906 F.2d at 1131. At no point did Defendant himself try to "fire" counsel, ask for new counsel, or suggest that he wished to conduct his own defense. Because the district court was never put on notice that Defendant was dissatisfied with counsel and wished to have him removed, or to have new counsel, we are satisfied that the district court had no duty to inquire further. Accordingly, the district court did not abuse its discretion in denying defense counsel's motion to withdraw.

### 4. *Defendant's Motion to Withdraw Guilty Plea*

Defendant also contends that the district court erred in granting his motion to withdraw the guilty plea. In essence, Defendant contends that the district court should have conducted a more detailed inquiry regarding his motion. Defendant also asserts that this presents a highly unusual case because defense counsel sought to withdraw a short time after Defendant's guilty plea was withdrawn.

testimony of several bank tellers, a bank customer, Defendant's accomplice, Stephen Rice, an ex-girlfriend, Miki Gotoh, and a fellow inmate to whom Defendant had reportedly admitted to committing nine bank robberies. At least two of these witnesses identified Defendant from a photospread and at trial. The Government also presented surveillance photographs from a number of the robberies.

Furthermore, the district court instructed the jury that such evidence could be considered for the sole purpose of determining whether there were any similarities between the May 6 robbery and the robberies charged in the indictment, thereby suggesting that the same person committed all of the robberies. The jury was also instructed that if they found that there were sufficient similarities between the charged robberies and the May 6 robbery, they could, but need not, infer from those similarities that Defendant was the person who committed the charged robberies. Finally, the jury was instructed that they could not consider such evidence for any other purpose, or as proof that the Defendant was a bad character or had a propensity to commit crimes.

We are satisfied that although the district court erred in admitting evidence of the high speed police chase, such error was harmless given the other evidence presented against Defendant.

### 3. Defense Counsel's Motion to Withdraw

Next, Defendant asserts that the district court erred in denying defense counsel's motion to withdraw. We review the district court's denial for abuse of discretion. *See United States v. Iles*, 906 F.2d 1122, 1130 n.8 (6th Cir. 1990). When reviewing a district court's denial of a motion to withdraw or substitute counsel, we generally must consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration

of my case that I felt I needed to talk to him about; and it just seemed like it was getting closer and closer to my trial, and my questions were going unanswered. It's not that I've lost confidence in my attorney.

(J.A. 73). Based upon Defendant's answer, the district court denied counsel's motion to withdraw.

As scheduled, trial commenced on May 24, 1999. The Government called several eyewitnesses during the five day trial. The jury returned a verdict of guilty as to all counts charged in the indictment. Defendant was sentenced to 125 months imprisonment on each bank robbery charge, to run concurrently; 60 months imprisonment on the first § 924(c) charge, to run consecutive to the bank robbery sentences; and 240 months on the remaining two § 924(c) charges, to run consecutive to each other and to all other sentences; essentially amounting to a total sentence of 55 years imprisonment.

### *Discussion*

Defendant appeals his convictions on four grounds: (1) the Government failed to prove "operability" within the definition of firearm under 18 U.S.C. §§ 921(a)(3) & 924(c), (2) the district court erred by allowing evidence of a subsequent unindicted bank robbery as "similar acts" evidence under Rule 404(b) of the Federal Rules of Evidence, (3) the district court erred in denying defense counsel's motion to withdraw, and (4) the district court erred in allowing Defendant to withdraw his guilty plea. For the following reasons, we find Defendant's arguments to be without merit.

### 1. "Operability" under § 924(c)

Defendant first asserts that the trial court erred in denying his Rule 29 motion for acquittal on the three § 924(c) charges. We review sufficiency-of-the-evidence claims by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the elements of the crime beyond a reasonable doubt."

*United States v. Hernandez*, 227 F.3d 686, 694 (6th Cir. 2000) (citing *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998)).

In general, § 924(c) provides for an additional penalty whenever a defendant uses, carries, or possesses a "firearm" during and in relation to any crime of violence. *See* 18 U.S.C. § 924(c)(1)(A). For purposes of § 924(c), the term "firearm" is defined as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." *Id.* § 921(a)(3).

Defendant contends that his § 924(c) convictions must be reversed because none of the evidence presented at trial establishes that the firearms were "operable." As this Court has previously stated, "a firearm need not be operable to satisfy the definition of firearm for purposes of 18 U.S.C. § 924(c)." *United States v. Bandy*, 239 F.3d 802, 805 (6th Cir. 2001) (collecting cases); *see also United States v. Yannott*, 42 F.3d 999, 1006 (6th Cir. 1994) ("[T]he law is clear that a weapon does not need to be operable to be a firearm.").

Defendant's reliance on the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995), as well as this Court's post-*Bailey* decision in *United States v. Moore*, 76 F.3d 111 (6th Cir. 1996), fails to persuade us otherwise. Nothing in either *Baily* or *Moore* undermines our prior holding that a weapon need not be operable to constitute a firearm under § 921(a)(3).

We are also satisfied that there was ample evidence from which the trier of fact could find, beyond a reasonable doubt, that Defendant carried, used, or possessed a firearm as defined in 18 U.S.C. § 921(a)(3) in relation to a crime of violence, *i.e.*, in connection with the charged bank robberies. Stephen Rice, Defendant's accomplice in the first robbery, testified that Defendant provided him with a .38 caliber

only of the May 6 robbery, but also of a resulting high speed police chase involving seven or eight police cruisers.

The district court recognized that evidence of the May 6 robbery was indeed prejudicial because of its persuasive value in establishing the Defendant's identity, but was satisfied that any undue prejudice could be avoided by the proper limiting instructions. The district court then proceeded to instruct the jury that it could consider evidence of the May 6 robbery only to determine the identity of the perpetrator, and for no other reason. We review the district court's determination as to the potential for unfair prejudice for abuse of discretion. *United States v. Wright*, 16 F.3d 1429, 1442 (6th Cir. 1994).

"A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989). Despite the very broad discretion granted the district court in making Rule 403 determinations, we find that it was error to allow testimony regarding the high speed police chase. In our opinion, the details of the high speed chase were of little assistance to the jury in determining identity in this case as it was undisputed that Defendant committed the May 6 robbery. Furthermore, none of the robberies charged in the indictment involved a high speed chase.

We find, however, that the district court's error in allowing evidence of the high speed police chase was harmless in light of the overwhelming evidence of Defendant's guilt. *See United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001) (applying harmless error analysis where government presented other convincing evidence aside from "other acts" evidence). "An error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights--that the judgment was substantially swayed by the error." *Id.* (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946)).

The Government presented substantial eyewitness testimony regarding the bank robberies, including the

combination, present an unusual and distinctive pattern constituting a "signature." For example, in *United States v. Woods*, 613 F.2d 629, 635 (6th Cir. 1980), we found that the defendants' conduct revealed a "signature" for Rule 404(b) purposes "insofar as each was an armed robbery by robbers wearing ski masks, goggles, and jumpsuits and using a stolen vehicle for a getaway car." Likewise, we find that the similarities cited by the district court, in combination, are sufficient to establish a "signature."

Defendant also asserts that the district court "vitiated" the effectiveness of Rule 404(b) by discounting the dissimilarities between the May 6 robbery and the robberies charged in the indictment, and specifically, the fact that Defendant used a weapon and an accomplice during his earlier robberies, but not in the May 6 robbery. Although some dissimilarities existed between the May 6 robbery and the earlier robberies charged in the indictment, the district court found that such dissimilarities represented a refinement of Defendant's technique, or resulted from the witnesses' differing observations or perspectives; not from a material difference in the acts themselves.

The robberies charged in the indictment spanned a time period from November 1997 through April 1998. The dissimilarities cited by Defendant arise only in connection with the first three robberies, for which Defendant was also charged with using a weapon and, as to the first robbery charged in the indictment, in which an accomplice was used. Defendant was charged with six subsequent robberies in which no weapon or accomplice was used. At a minimum, the May 6 robbery was similar to the last six robberies charged in the indictment and therefore, was properly admissible to prove Defendant's identity in connection therewith.

Next, Defendant contends that the district court erred in determining that the probative value of the evidence outweighed its potential for unfair prejudice. Defendant specifically objects to the fact that the jury heard evidence not

handgun. Various bank tellers testified that they observed the firearm during the robbery, which was readily discernable from the surveillance photographs. Rice also testified that he gave Defendant a chrome Lorcin 9 millimeter pistol for the second robbery, which bank tellers testified they saw Defendant carrying during the robbery. The Lorcin pistol was also admitted into evidence. Similarly, eyewitnesses testified, and surveillance photographs clearly showed, that Defendant carried a handgun during the third bank robbery. A criminalist from the Columbus Police Department testified that the firearm used during the third robbery appeared from the surveillance photographs to possess the usual features of a handgun.

Accordingly, we find that the district court did not err in denying Defendant's Rule 29 motion with respect to the three § 924(c) charges.

### 2. "Similar Acts" Evidence

Defendant also contends that the district court erred in allowing the Government to present evidence of a subsequent bank robbery as "similar acts" evidence under Rule 404(b) of the Federal Rules of Evidence.

Under Rule 404(b), a court may admit evidence of a defendant's "other" or "similar" bad acts or crimes only if the evidence is probative of a relevant fact, and not to show the defendant's "character" or "propensity" to commit bad acts. *United States v. Clemis,* 11 F.3d 597, 600 (6th Cir. 1993). Other bad acts may be admissible under Rule 404(b) if relevant to proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b).

During trial, the Government moved under Rule 404(b) to introduce evidence of a subsequent unindicted bank robbery on May 6, 1998, for the purpose of proving identity. Unlike the nine bank robberies in question, Defendant does not dispute that he committed the May 6 robbery. Both parties agreed that Defendant was given proper notice. Over

Defendant's objection, the district court determined (1) that identity was an issue, (2) that the unindicted bank robbery was sufficiently similar to the charged robberies to be probative of identity, and (3) that the probative value of the proffered evidence outweighed its potential for unfair prejudice.

The Rule 404(b) inquiry consists of three parts. First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403. *United States v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir. 1992). Defendant, who pled guilty to the May 6 robbery in state court, does not dispute the first step of the Rule 404(b) inquiry, *i.e.*, that the May 6 robbery occurred. Instead, Defendant challenges the second and third steps of the district court's inquiry, *i.e.*, whether the May 6 robbery was admissible for a proper purpose under Rule 404(b), and whether the May 6 robbery was more prejudicial than probative.

Defendant asserts that the district court erred in determining that the May 6 robbery was sufficiently similar to the charged robberies to be relevant to the issue of identity. We review the district court's determination that the May 6 robbery was admissible under Rule 404(b) to show Defendant's identity for abuse of discretion.[1] *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (explaining that per the United States Supreme Court's decision in *General Electric*

---

[1] In their briefs, both parties, relying on prior Sixth Circuit decisions, assert that we should review *de novo* the district court's decision that the evidence was admissible for a proper purpose under Rule 404(b). *See, e.g., United States v. Jobson*, 102 F.3d 214, 220 (6th Cir. 1996); *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996). However, in light of the Supreme Court's decision in *Joiner*, and our recent decision in *Trepel*, we conclude that the appropriate standard of review for the admissibility of evidence under Rule 404(b) is "abuse of discretion."

*Co. v. Joiner*, 522 U.S. 136, 142-43, 118 S. Ct. 512, 517, 139 L. Ed. 2d 508 (1997), *all* evidentiary rulings are to be reviewed under an abuse of discretion standard).

The record reflects that the district court gave careful and extensive consideration to the relevant facts and law in reaching its conclusion that the evidence was properly admissible to show identity under Rule 404(b). In determining that the May 6 robbery and the robberies charged in the indictment were sufficiently similar for Rule 404(b) purposes, the district court found that three elements, when viewed in combination, constituted a "signature" due to their uniqueness: (1) the use of a ski mask in conjunction with a hooded sweatshirt, (2) by a person who always burst into the bank and leaped over the teller counter, and (3) then leaped over the teller counter again to leave. Although these three elements, by themselves, were not particularly unusual, the district court found that the perpetrator's consistent use of the three in combination constituted a "signature."

The district court also noted several other similarities between the May 6 robbery and the robberies charged in the indictment. For example, all of the robberies were in the same neighborhood around the periphery of the city and involved small banks with small staffs; the perpetrator was always reported as being a young, athletic black male somewhere around six feet tall, wearing bulky clothing; the perpetrator used similar commands in each case; the perpetrator always collected the money himself; in the last six robberies, the perpetrator always left through the back of the bank and appeared not to use a getaway car; most of the robberies occurred on a Wednesday or Friday morning; and all of the robberies occurred within a relatively short period of time.

Defendant contends that the similarities the district court relied upon were simply conduct associated with the standard bank robbery and, therefore, did not constitute a "signature." As the district court properly stated, however, standard conduct, although not particularly unusual by itself, may, in