NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0757n.06

No. 08-2159

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 15, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| MARCUS CONWAY, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |

BEFORE:  BATCHELDER, KEITH, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge**.  Defendant-appellant Marcus Conway appeals his conviction for three counts of distribution of 5 grams or more of cocaine base.  Contrary to Conway's argument on appeal, the district court did not abuse its discretion in denying Conway's motion for the appointment of new counsel.

In 2007, Michigan State Police, working with federal BATF agents, developed a confidential informant named Thomas Dancy, who conducted supervised purchases of drugs in Saginaw, Michigan.  Wearing a video recorder and an audio transmitter, Dancy made three controlled purchases from Conway in June and July 2007.  A federal grand jury indicted Conway on three counts of distribution of 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).  Attorney Daniel Van Norman was appointed to represent Conway in November 2007.

At a pretrial conference on February 13, 2008, Conway moved for the appointment of substitute counsel. Conway complained that during the ninety days since Van Norman had been assigned to him, they had met together only once, at the Bay County jail, to discuss the government's evidence. Conway noted that the January 25, 2008 cutoff date set by the district court for filing pretrial motions had passed without any motions being filed on his behalf. February 13, the date of the pretrial hearing, was also the plea cutoff date set by the district court. Conway told the court that he had not seen the government's plea offer until that very morning, even though Van Norman had received the government's offer more than a week before. Finally, Conway stated that he had attempted to contact Van Norman's office on several occasions, and that "[t]hey would keep hanging up in my face."

Van Norman explained that, because of the unusual simplicity of the government's case, there were only about fifty pages of discovery material, and that he had discussed all of this material with Conway during their meeting at the Bay County jail. Van Norman stated that after reviewing the government's evidence, he had advised his client that he did not think there were any pretrial motions that had merit, but that he was willing to entertain any ideas Conway had. Conway did not suggest any specific pretrial motions that he felt should have been filed before the January 25 cutoff date. Van Norman stated that a winter snowstorm had prevented him from meeting with Conway to discuss the government's plea offer, but that he had held several telephone discussions with Conway regarding the plea agreement, and had read the terms of the agreement verbatim to Conway

over the phone. Finally, Van Norman explained that he had an office policy of not accepting collect calls from clients when he was not in the office or available to take them.

Van Norman assured the court that he was willing and able to represent Conway, but requested a continuance because Van Norman's mother was in advanced stages of a serious medical condition and he thought this might interfere with his ability to prepare for trial. The district court said it was not inclined to appoint new counsel because Conway had not shown that Van Norman had fallen short in his professional obligations. However, the court set a new pretrial conference date for March 5, 2008, giving Conway an additional twenty-one days to decide whether to keep Van Norman, hire his own attorney, or proceed *pro se*. The court also allowed Conway an additional twenty-one days to review the government's plea offer, and granted a continuance in light of Van Norman's personal situation.

The March 5, 2008 pretrial conference date was continued until April 16, 2008. At that time the court determined that there were no discovery issues and that Conway did not intend to plead guilty. Conway did not indicate that there were any pretrial motions that he had been prevented from filing or that he was dissatisfied with Van Norman's performance in any other way. A jury convicted Conway on all three counts of cocaine distribution. At the sentencing hearing on August 21, 2008, Conway requested that the court appoint new counsel for his appeal, but stated that he had no objection to Van Norman's representing him during sentencing. Conway was sentenced to 360 months' imprisonment for each count, with all three sentences to be served concurrently.

On appeal, with different counsel, Conway argues that the district court abused its discretion when it denied his motion for the appointment of new counsel, because a conflict between Conway and Van Norman resulted in a "complete breakdown of the defense strategy." In order to succeed, Conway must show an abuse of discretion, *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007), but he has not done so.

The Sixth Amendment right to counsel of choice is not absolute. "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). It was not an abuse of discretion for the district court to find no "good cause" here, in light of the four factors laid out in *United States v. Mack*:

> When reviewing a district court's denial of a motion to withdraw or substitute counsel, we generally must consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

258 F.3d 548, 556 (6th Cir. 2001) (citing *United States v. Williams*, 176 F.3d 301, 314 (6th Cir.1999), and *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996)).

The first *Mack* factor—timeliness—does not much affect the analysis here. Although Conway first complained about Van Norman's performance the last pretrial conference, held one week before trial was scheduled to begin on February 20, 2008, the district court did not treat his request for new counsel as untimely. Instead, the court allowed Conway an additional twenty-one days to decide whether to continue with Van Norman, hire his own lawyer, or proceed *pro se*.

However, because all of the other *Mack* factors support the district court's refusal to appoint new counsel, the court was not required to grant Conway's request merely because it was timely. *See United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004).

Second, the district court's inquiry into Conway's reasons for wanting new counsel was adequate to support its conclusion that Conway had not shown "good cause." *See Mack*, 258 F.3d at 556. During the hearing on February 13, Conway argued that Van Norman had let the cutoff date for pretrial motions slip away without filing any motions on his behalf. But Conway did not identify anything counsel should have done differently. Van Norman explained that he had advised his client that, in his professional judgment, there was no basis for filing any pretrial motions. The district court did not abuse its discretion in accepting this explanation. This case did not involve a search, statements made by the defendant, or other evidence that could be challenged before trial. Given the unusual simplicity of the government's case, it is difficult to imagine what pretrial motions could have been filed.

At oral argument, counsel suggested that trial counsel could have requested appointment of a fingerprint expert. However, we fail to see what difference a fingerprint expert would have made here. The video and audio recordings submitted by the government positively identified Conway as the seller in the three controlled cocaine purchases for which he was charged. Moreover, the issue on appeal is not whether trial counsel's performance was deficient, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984), but instead whether the district court abused its discretion in denying Conway's motion for the appointment of substitute counsel. Even if trial counsel could have

requested appointment of a fingerprint expert, the district court did not abuse its discretion in concluding that Van Norman's failure to do so was not "good cause."

The district court also inquired adequately into Conway's frustration over his efforts to contact his attorney. Conway complained that Van Norman's staff did not accept his calls and kept "hanging up in [his] face." But Van Norman explained to the court that his office had a policy of refusing collect calls when Van Norman was not available to speak with clients. The district court did not abuse its discretion in accepting this explanation either. Carrying out his professional obligations did not require that Van Norman be available to talk every time his client telephoned. Moreover, there was ample evidence that Van Norman consulted with his client whenever there were developments in the case. Conway acknowledged that he had spoken with his attorney the week before the February 13 hearing regarding the government's plea offer. And Conway did not dispute Van Norman's explanation that he had already discussed all of the government's evidence during their meeting at the Bay County jail.

Third, the district court did not abuse its discretion in determining that there was not a "total lack of communication preventing an adequate defense." *Mack*, 258 F.3d at 556. The record shows that Van Norman frequently consulted with Conway and kept him informed about developments in the case. Van Norman discussed all the government's evidence with Conway at their initial meeting in the Bay County jail. Van Norman explained that he was waiting to receive the government's plea offer before he met with Conway again. Although a winter snowstorm prevented Van Norman from meeting with Conway a second time before the February 13 pretrial conference, Van Norman

explained that he had held several telephone discussions with Conway during which he communicated the terms of the government's plea offer and read portions of the plea agreement verbatim over the phone. Van Norman advised Conway that in his professional judgment there were no meritorious pretrial motions that could be filed before the January 25 cutoff date. The district court specifically stated that Van Norman had a professional obligation to evaluate independently the merits of any pretrial motions.

Conway argues that a breakdown in communication between him and Van Norman "resulted in little evidence being placed on the record at either the trial or the sentencing stage of the case." But Conway has not pointed to any evidence that should have been produced at trial. Conway has not identified any witnesses that should have been called, nor has he brought to our attention any mitigating evidence that Van Norman failed to present at sentencing. This was a virtually indefensible case. Conway's conviction was supported by overwhelming evidence, including video footage and audio recordings of three hand-to-hand sales to an informant, the testimony of federal agents who developed the informant, and the three batches of crack cocaine that exchanged hands. There was very little Van Norman could do to assist Conway at trial or sentencing. It is not apparent what more a defense attorney could have done.

Conway points to the distractions in Van Norman's personal life as an explanation for what Conway perceives as a "total lack of communication" with Van Norman. But the district court did not abuse its discretion in treating the situation in Van Norman's personal life as a separate issue from Conway's dissatisfaction with Van Norman's performance. The condition of Van Norman's

mother had no bearing on Conway's perception that his attorney's performance was deficient at the time he asked the court to appoint new counsel. Indeed, when Conway addressed the court during the hearing on February 13, Conway was not even aware that Van Norman was dealing with a personal situation. Morever, because Van Norman had only learned of the seriousness of his mother's condition the night before, this personal distraction could not possibly have contributed to Conway's dissatisfaction with his attorney's performance. To accommodate the increased demands on Van Norman's time and attention, the district court granted defense counsel a continuance. The court was not required to appoint new counsel as a remedy under the circumstances.

In sum, Conway has simply failed to allege that his attorney's performance was deficient. At no time did Conway imply that he had received less than adequate assistance. Conway cites no case holding that a district court abused its discretion in refusing to appoint new counsel where the defendant failed to show any deficiencies in appointed counsel's performance. As a result, Conway has not shown "good cause" warranting substitution of counsel.

Finally, the district court fairly balanced Conway's right to counsel of his choice against the public's interest in the prompt and efficient administration of justice. *See Mack*, 258 F.3d at 556. At the pretrial hearing on February 13, 2008, the district court noted that any substitute counsel would incur additional expenses in preparing for trial that were not justified unless Van Norman's performance had been deficient in some way. The district court did not abuse its discretion in concluding that Conway's failure to identify any objective deficiency in Van Norman's performance weighed against imposing on the public the additional time and expense of appointing new counsel.

Because the district court did not abuse its discretion in refusing to grant Conway's request for the appointment of new counsel, the conviction is AFFIRMED.