NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0577n.06

No. 10-1245

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 05, 2012*

LEONARD GREEN, Clerk

DAVID STADLER, )
)
    Petitioner-Appellant, )
)
                                      )   ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR
) THE EASTERN DISTRICT OF
MARY BERGHUIS, ) MICHIGAN
)
    Respondent-Appellee. )

Before: SILER and KETHLEDGE, Circuit Judges; GRAHAM, District Judge.[*]

KETHLEDGE, Circuit Judge. A Michigan jury convicted David Stadler of raping a woman in her home. After losing his state appeals, Stadler petitioned the federal district court for a writ of habeas corpus. The district court denied the writ in a thorough and carefully reasoned opinion. We affirm.

I.

In May or June of 1997, Stadler first contacted the victim, N.C., allegedly by means of a wrong-number phone call. They ended up talking for a while, and then spoke on the phone several times over the next few weeks. During that time, Stadler approached N.C. while she was at the Hayloft Bar with some friends, though she had never seen him before. Another time, Stadler

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

approached her while she was in her front yard, playing with her son, though she had never told him where she lived. Stadler had two prior convictions for stalking at this time.

On June 14, 1997, Stadler went to N.C.'s house; the two had planned to see a movie. When Stadler tried to kiss N.C., she said no. Stadler pushed her onto the couch, ripping her sweatshirt. Despite her pleas to stop, he took off her pants and underwear. He forcibly penetrated her, giving her a black eye and biting her breast in the struggle. After Stadler ejaculated, N.C. immediately went to the bathroom and cleaned herself. He was still sitting on the couch when she came out. He asked whether they were still going to a movie, and she asked him to leave. As he did so, he said, "Good luck with Matt." Although Matt was the name of the father of N.C.'s son, she testified she had never told Stadler that. After Stadler left, N.C. took a shower, douched several times, cleaned the couch with Lysol, locked the doors, took three sleeping pills, and slept. She did not call police or neighbors because she was embarrassed about what happened.

The next day, a friend convinced N.C. to go to the police. She filled out a statement and the investigator photographed her black eye and the bite mark on her breast. N.C. left out some details (such as Stadler's last name, according to testifying police witnesses) because she did not want to pursue prosecution. She made and broke several appointments to view a photo lineup. Over three years later, Detective McMullen called N.C. and went to her house with a photo display. She quickly identified Stadler.

The State eventually charged Stadler with first-degree criminal sexual conduct. The jury convicted him and he was sentenced to 25 to 40 years in prison. The Michigan Court of Appeals thereafter remanded for an evidentiary hearing (called a *Ginther* hearing) to determine whether

Stadler's attorney had provided constitutionally ineffective assistance. *See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). The trial court found that Stadler's attorney had been effective. The Michigan Court of Appeals then affirmed Stadler's conviction and sentence. The Michigan Supreme Court denied leave to appeal. Stadler later filed a habeas petition under 28 U.S.C. § 2254 in federal district court, raising ten grounds for relief. The district court denied his petition but granted a certificate of appealability on two issues: first, whether Stadler was prejudiced by ineffective assistance of counsel; and second, whether the trial court violated Stadler's constitutional rights by refusing to allow him to fire his lawyer the day before his sentencing. This appeal followed.

II.

A.

The state courts rejected Stadler's ineffective-assistance claim on the merits, so we apply the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996. Under that standard, we will not grant habeas relief unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

To succeed on his claim, Stadler must show that his attorney "made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and that those errors were "prejudicial"—i.e., "there is a reasonable probability that, but for [those] errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). We must determine whether the state court's determination under *Strickland* was unreasonable, which is "a substantially higher threshold" than mere incorrectness. *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009). Because the *Strickland* standard is general, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

1.

Stadler first argues that his attorney was ineffective for failing to pursue an alibi defense. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. We have previously recognized that failure to investigate potential alibi witnesses can constitute deficient performance. *See Stewart v. Wolfenbarger*, 468 F.3d 338 (6th Cir. 2006). But counsel's strategic decision not to mount an all-out investigation can, in some circumstances, be supported by reasonable professional judgment. *See Burger v. Kemp*, 483 U.S. 776, 794-95 (1987).

Here, trial counsel Timothy Barkovic testified that he spoke with Stadler's mother, but that he did not interview Stadler's sister or other family members who might have supported Stadler's alibi defense. Barkovic explained his decision as follows:

> Number one, neither Mr. Stadler nor his mother could definitively give me any information that would lead me to believe that the so-called party at the family residence coincided with the date of this offense. And no one was able to in fact verify that the dates coincided so that in fact an alibi would have occurred to taken place.
>
> Secondly, the alibi witnesses were all family members of Mr. Stadler, and he and I discussed the fact that by virtue of the relationship with the alibi witnesses being family members their testimony may be suspect based upon the relationship by and between them and Mr. Stadler.
>
> And lastly, I discussed in general terms the defense itself. The fact that I had had significant prior trial experience with the use of alibi witnesses and after those trials in terms of interviewing witnesses and the like and interviewing prospective jurors the fact that alibi defenses by family members just doesn't seem to work so to speak.

> The testimony is considered suspect to begin with but when you have family members supporting an alibi it becomes even more or less credible[.]

Hr'g Tr. at 14-15. Stadler eventually agreed with Barkovic that alibi witnesses should not be called in his defense at trial.

The state court of appeals held that Barkovic's choice was reasonable. The federal courts' review of that conclusion is "doubly deferential"—"[w]e take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal quotation marks and citations omitted). Here, the district court applied that standard in earnest: although the court itself thought that Barkovic's decision to reject an alibi defense was unreasonable, the court held—in an exhaustively reasoned opinion—that the state court's conclusion to the contrary fell within the latitude afforded it under the habeas statute. We agree with that holding: Barkovic articulated reasonable grounds for his strategic decision not to pursue an alibi defense, even if doing so left Stadler with a weak defense. And in any event Barkovic thought the alibi defense was a likely loser at trial.

2.

We dispose of Stadler's remaining ineffective-assistance theories summarily. Stadler argues that Barkovic was ineffective for deciding not to have Stadler testify at trial. We agree with the district court that this decision was "a far easier call." Barkovic justifiably feared that Stadler would be a "loose cannon" as a witness. His testimony might well have opened the door to his two prior convictions for stalking—behavior not unlike that which preceded the rape here. Stadler ultimately

acquiesced in Barkovic's decision on this point. The state court of appeals held that Barkovic's decision not to put Stadler on the stand was reasonable. We agree.

Stadler's next theory is that Barkovic should have objected to the trial court's jury instruction as to how the jury should evaluate evidence of Stadler's alleged statements to the victim. But the state court of appeals held that the instruction did not suggest to the jury that Stadler had made some sort of confession. Again we agree.

Stadler also argues that Barkovic was deficient for failing to object to the prosecutor's improper arguments. The Michigan Court of Appeals held that the trial court cured any prejudice from those arguments, that defense counsel's closing statement invited some of the prosecutor's remarks, and that the prosecutor did not use improper civic-duty argument. The state court's decision again was reasonable.

Stadler finally argues that Barkovic should have called the lead investigating officer, Detective McMullen, to highlight the State's lack of effort in tracking down witnesses. The state court of appeals held that Stadler could not show that Detective McMullen's testimony would have changed the outcome of his trial, which means that Barkovic's omission did not prejudice Stadler within the meaning of *Strickland*. Again we agree.

B.

Stadler claims that the trial court deprived him of his Sixth Amendment right to counsel when it refused to allow him to fire his attorney on the day of his sentencing. "Trial judges necessarily require a great deal of latitude in scheduling trials." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). "[O]nly an unreasoning insistence upon expeditiousness in the face of a justifiable request

for delay violates the right to the assistance of counsel." *Id*. at 11-12 (internal quotation marks omitted). The state court of appeals found that this claim was not preserved, since Stadler failed to lodge a timely objection. But the court reviewed a related claim on the merits: namely, whether the trial court abused its discretion in denying Barkovic's motion to withdraw and motion for a continuance of sentencing in order to allow Stadler to retain substitute counsel. Regardless of whether the issue was procedurally defaulted, Stadler loses on the merits.

When reviewing the denial of a motion to substitute counsel, "we generally must consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001). Here, Stadler did not attempt to fire Barkovic until the day of sentencing. Such an untimely motion weighs against Stadler. *See United States v. Trujillo*, 376 F.3d 593, 606-07 (6th Cir. 2004). The trial court made a sufficient inquiry into the situation, hearing from both Barkovic and Stadler and adjourning the matter overnight to consider the issue. Stadler did show differences of opinion with Barkovic, but he did not show "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). And the two weeks' continuance that Stadler requested goes against the public's interest in the prompt and efficient administration of justice. Thus, we agree with the Michigan Court of Appeals that the trial court's decision did not violate Stadler's constitutional rights.

The district court's judgment is affirmed.