NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0488n.06

No. 23-3209

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Nov 30, 2023

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| DEMETRIUS TROUTMAN, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Demetrius Troutman pleaded guilty to conspiracy to possess with intent to distribute fentanyl and to possessing a firearm in furtherance of a drug-trafficking crime, and the district court imposed a fifteen-year prison sentence. Troutman challenges on appeal the district court's denial of his attorney's motion to withdraw as counsel and his second motion to withdraw his guilty plea. Because the record is insufficient to permit meaningful appellate review, we issue a limited remand for the district court to consider anew its denials of these motions.

I.

The DEA suspected that defendant Demetrius Troutman and a co-conspirator were conducting a large-scale drug-trafficking operation in Columbus, Ohio. So agents executed a search warrant at a house associated with Troutman, which resulted in the recovery of a bevy of firearms (16), ammunition (30,000 rounds), and drugs (nearly 19 kilograms of marijuana and distribution amounts of cocaine, heroin, oxycodone, fentanyl, and crystal methamphetamine).

A grand jury indicted both Troutman and his co-conspirator for conspiracy to possess fentanyl and heroin with the intent to distribute (count one) and only Troutman for possession of a firearm in furtherance of drug trafficking (count two). Troutman pleaded guilty to both counts—without the benefit of a plea agreement—at a plea hearing on November 19, 2021, after the government withdrew the heroin reference.

On March 11, 2022, Troutman's attorney, Andrew Sanderson, filed a motion to withdraw the guilty plea as to the firearm count. The genesis of that motion was that Troutman reviewed the presentence report and allegedly "learned for the first time that he alone" was charged with the firearm count and that he had erroneously believed "that the other individuals in the residence at the time of the offense would similarly be held responsible for the firearms." The district court denied the motion in a written order on July 13, 2022, reasoning that none of the factors identified in *United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994), weighed in favor of granting it—the untimely motion did not articulate a persuasive reason for the delay, Troutman had not maintained his innocence, and his background and prior criminal convictions did not undermine the voluntariness of his guilty plea. Defendant filed an appeal pro se, which we dismissed for lack of jurisdiction.

A few days later, Troutman sent a pro se letter to the district court, stating that he wanted to "fire [his] lawyer for ineffective assistance of counsel." The letter asserted that Sanderson "lied to [him] about all the motions" and that Troutman had not heard from Sanderson since May 10, 2022. It also alleged that he pleaded guilty only because he "was threatened by the Prosecutor" with another drug-trafficking indictment if he did not plead guilty. Sanderson responded immediately by moving to withdraw as counsel in a one paragraph motion, noting Troutman's pro

se filings and asserting that it was "impossible" for him to continue to represent Troutman because he was "now likely a witness in the case."

The district court denied Sanderson permission to withdraw as counsel in another written order. It reasoned that "[w]hile Mr. Sanderson may feel his client is uncooperative, this alone cannot constitute good cause for withdrawal. Particularly considering the advanced stage of these proceedings, withdrawal without good cause will surely interfere with the efficient and proper functioning of this Court." And it abruptly dismissed Troutman's claim that Sanderson "lied":

> [T]his Court finds no evidence Mr. Sanderson "lied" to Defendant and concludes that any purported "conflict" between the two is not "so great that it resulted in a total lack of communication preventing an adequate defense." Moreover, without further factual allegations than simply that Mr. Sanderson "lied to him about all the motions," the Court cannot ascertain from the face of Defendant's filing whether he has justified withdrawal.

(Quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)) (brackets and record citation omitted). It never conducted a hearing on the matter and instead came to these conclusions based only on the filings by Troutman and Sanderson discussed above.

Two weeks after his attorney's motion to withdraw as counsel, Troutman replied with another letter to the district court, reiterating that Sanderson "never filed any of the motions he said that he did [and that] he lied to [Troutman's] face" and that the two had not spoken in "over 90 days."[1] According to Troutman, he advised Sanderson that he "was going to write the Judge to see what's going on with the motions [Sanderson] filed," to which Sanderson replied that doing so "would hurt" Troutman. And he once again raised his prosecutorial-threat position, writing that Sanderson "let" the prosecutor threaten him with the specter of a superseding indictment.

---

[1]Although this letter was filed with the district court two days before the written order denying Sanderson permission to withdraw as counsel, it appears on the docket after the district court's order. Thus, it is not clear that the district court considered it when issuing that order.

Sanderson subsequently moved again on Troutman's behalf to withdraw the guilty plea. This time, the motion sought leave for Troutman to withdraw his pleas for both counts, raising his I-only-pleaded-guilty-because-I-felt-threatened position, and asserting that he was innocent of the crimes. A few days later, Troutman filed a pro se motion asserting "ineffective assistance," reiterating again his complaints about Sanderson's representation of him. The district court denied both pending motions in short order. Regarding the ineffective-assistance motion, the district court commented that it had "little patience" for the motion, that Troutman's motion "directly contravene[d]" an order prohibiting him from making pro se filings, and that there was "nothing in this new filing that was not in Defendant's previous motion." Concerning the plea-withdrawal motion, the district court rejected it under the "law of the case": "Because Defendant makes identical arguments in his second Motion to Withdraw his Guilty Plea as he did in his first, the law of the case doctrine precludes this Court from reconsidering these arguments. Nothing has changed between the filing of the first Motion, and the filing of the second."

The district court eventually sentenced Troutman to serve fifteen years in prison. Defendant timely appeals.

## II.

We first address Troutman's argument that the "district court should have made the government explain its charging decision" when it charged only him with the firearm count. He suggests the government nefariously charged him alone with the firearm count; that the district court should have construed his first motion to withdraw as one claiming selective prosecution; and that the district court should have, on its own accord, ordered the government to explain its

charging decision.[2]  Even if he preserved such a challenge given the pretrial time constraints for such motions under Federal Rule of Criminal Procedure 12(b)(3), his argument lacks merit. Troutman admits he put forth no evidence below "to show that the prosecutor's decision was arbitrary or race-based," and makes no attempt here to demonstrate, through "clear evidence," that the government's charging decision "was motivated by a discriminatory purpose" and "had a discriminatory effect." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citation omitted). In his view, *Armstrong* was wrongly decided by the Supreme Court, so he is raising that issue here solely "to preserve it for further review."  Given that concession and the lack of any evidence presented on this issue below, we cannot fault the district court for failing to require sua sponte the government to explain its charging decision here.

### III.

With that preliminary matter addressed, we turn to the two main issues on appeal:  the district court's denials of Sanderson's motion to withdraw as counsel and Troutman's second motion to withdraw his guilty plea.  For the following reasons, we issue a limited remand for the district court to reconsider these motions.

### A.

*Attorney Withdrawal.*   Generally, a criminal defendant is entitled "to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006).  But "[t]he right to counsel of *choice,* unlike the *right* to counsel . . . is not absolute.  An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *Iles*, 906 F.2d at 1130.

---

[2]Troutman does not contend on appeal the district court erroneously denied his first motion to withdraw his guilty plea and has thus forfeited any such argument here.

When "a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to" whether that dissatisfaction gives rise to good cause for counsel's withdrawal. *Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008). "[C]ourts cannot properly resolve [attorney-withdrawal] motions without probing why a defendant wants a new lawyer." *Martel v. Clair*, 565 U.S. 648, 664 (2012). Such an inquiry "not only aids in determining whether 'good cause' has been shown, but serves to ease the defendant's distrust, to preserve the integrity of the trial process, and to foster confidence in the jury verdict." *Iles*, 906 F.2d at 1131. Only after such a review and upon a finding of good cause—or the lack thereof— may a district court resolve a motion to withdraw or for substitute counsel. *See United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017).

"To satisfy this requirement, the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *Id.* at 779 (internal quotation marks omitted); *see also United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004) (explaining that an inquiry is adequate when "all of the interested parties [are able] to present their respective evidence and arguments"). "[U]sually," this means questioning a defendant and his attorney in person. *Iles*, 906 F.2d at 1131; *see also United States v. DeBruler*, 788 F. App'x 1010, 1012 (6th Cir. 2019) (observing that "[o]ften the defendant's chance to be heard comes through a hearing, and when we review those hearings, we regularly note the length and nature of the discussions"). But an on-the-record, in-person hearing is not always necessary. For instance, a district court need not conduct an in-person hearing where a defendant fails to adequately indicate that he is dissatisfied with counsel and seeks removal, *Iles*, 906 F.2d at 1131 (citation omitted), or where the court otherwise has sufficient information to address the motion, *Martel*, 565 U.S. at 664–66.

But whether through an in-person hearing or an explained district-court decision, there must be some record to permit meaningful appellate review. *See id.* at 664; *see also Benitez*, 521 F.3d at 635 ("Had the district court *inquired* into Benitez's statements *and made explicit findings*, we could consider whether the court properly exercised its discretion.") (emphasis added). We review a district court's denial of a motion to withdraw for an abuse of discretion, *United States v. Mack*, 258 F.3d 548, 555–56 (6th Cir. 2001), and "it is impossible for us to ensure that the district court did not abuse its discretion if the order shows only that the district court exercised its discretion rather than showing *how* it exercised that discretion," *United States v. Howard*, 644 F.3d 455, 461 (6th Cir. 2011) (citation omitted).

Here, the district court did not probe Troutman's complaints about his attorney. At the time it ruled on Sanderson's motion to withdraw as counsel, the district court had before it Troutman's allegations that Sanderson lied about filing certain motions, that the two had not communicated in several months, and that Sanderson had told him at some point that raising those non-filed motions with the court "would hurt" Troutman (which could be construed as a threat to not do so). It further had a withdrawal-of-counsel motion filed by Sanderson right after Troutman submitted his first pro se letter with the district court. The district court, therefore, was on notice of Troutman's dissatisfaction with Sanderson, triggering its obligation to delve into the issue. *Benitez*, 521 F.3d at 634. But inquire it did not. Without a hearing, further briefing, or otherwise, the district court summarily concluded "no evidence" substantiated Troutman's assertions.

In defense of the district court's non-inquiry, the government posits one was unneeded because "the briefing was adequate and because Troutman does not allege that additional information would have been elicited by a hearing." But this is not one of those rare situations where a district court can summarily dismiss a defendant's concerns without conducting a hearing

or requesting additional information—as set forth, the district court faced specific complaints about Sanderson's performance, and it believed one side without testing the credibility of the other. Nor can we say whether defendant's failure to assert here what he would have said at such an inquiry is fatal, for our job is to review the "trial court's exercise of discretion," and "meaningful appellate review" is impossible here given the lack of an "on-the-record inquiry into the defendant's allegations," *Martel*, 565 U.S. at 664 (citation omitted), or "explicit findings" by the district court, *Benitez*, 521 F.3d at 635.

When we are "unable to determine whether the district court discharged its responsibility of ascertaining the reasons underlying the defendant's dissatisfaction with counsel," we can issue a limited remand for the district court to conduct such an inquiry and then address the typical factors a court considers when evaluating a motion to withdraw. *United States v. Jennings*, 945 F.2d 129, 132 (6th Cir. 1991); *see Mack*, 258 F.3d at 556 (setting forth the factors to consider when evaluating a motion to withdraw as counsel). We do so here (and express no opinion on the factors identified in *Mack*). Finally, we do not disturb the district court's judgment—it is for the district court to determine whether Sanderson had good cause to withdraw at the time the request was made. *Martel*, 565 U.S. at 666 n.4; *Jennings*, 945 F.2d at 132. If good cause existed, Troutman is entitled to new counsel and resentencing. *Martel*, 565 U.S. at 666 n.4; *Jennings*, 945 F.2d at 132; *see also United States v. Collado-Rivera*, 759 F. App'x 455, 467 (6th Cir. 2019).

B.

*Plea Withdrawal.* It is well established that "[a] defendant has no right to withdraw his guilty plea." *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012). Instead, he must demonstrate a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[T]he aim of th[is] rule is to allow a hastily entered plea made with unsure heart and confused

mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (per curiam) (citation omitted). We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Benton*, 639 F.3d 723, 726–27 (6th Cir. 2011).

Whether a defendant satisfies the "fair and just reason" standard turns on the totality of the circumstances, which we evaluate using the following seven factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d at 1181. "The factors listed are a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (per curiam). "The relevance of each factor will vary according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (citation and internal quotation marks omitted).

At issue here is the district court's denial of Troutman's second motion to withdraw his guilty plea. Recall that the motion challenged his guilty pleas to both counts, asserting for the first time (1) his innocence and (2) that he pleaded guilty under duress. To be sure, he raised those positions to the district court in other contexts, but he did not raise them in his first motion to withdraw his guilty plea. Yet the district court treated this second motion as if it were just a duplicate of the first, writing that Troutman made "identical arguments in his second Motion to

Withdraw his Guilty Plea as he did in his first," and thus "the law of the case doctrine preclude[d]" any further consideration.

Given our limited remand as to the district court's denial of the motion to withdraw as counsel, we find it prudent to instruct the district court to reconsider its denial of this motion as well. We cannot meaningfully review the district court's order for abuse of discretion when the district court apparently equated Troutman's second motion to withdraw his guilty plea with his first, despite their substantive differences. True, many factors the district court considered for the first one might map over to the second and the government may ultimately be correct that most, if not all, the factors weigh against Troutman, but it is not our role to make that call in the first instance. And as with the motion-to-withdraw-as-counsel issue, we do not disturb the judgment. Instead, we remand to the district court for it to reevaluate defendant's second motion to withdraw his guilty plea and leave it to the district court to reopen its judgment only if it finds that motion meritorious.

IV.

For these reasons, we remand to the district court for it to consider whether Sanderson had good cause to withdraw at the time he made the request and whether Troutman's second motion to withdraw his guilty plea presented a fair and just reason at that time to do so.