NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0261n.06

Case Nos. 21-5493/5494

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jun 30, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| JAMES JONES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: McKEAGUE, NALBANDIAN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** While on supervised release stemming from a felon-in-possession conviction, James Jones shot a man he believed was a witness against him in the underlying criminal proceeding. For this more recent act, Jones pleaded guilty to possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Due to the prior felony convictions that Jones had amassed, the district court classified Jones as an armed career criminal and sentenced him to 160 months' imprisonment. In addition, the court imposed a consecutive 60-month sentence primarily because Jones's attempted murder violated the terms of his supervised release. Jones now challenges those sentences on several grounds. We affirm.

## BACKGROUND

In 2003, Jones struck his wife several times and threatened to shoot her in the head. He was arrested a few months later and pleaded guilty to being a felon in possession of a firearm.

18 U.S.C. § 922(g)(1). As the felon-in-possession charge suggests, this was not Jones's first run-in with the law; he had a series of prior convictions for felonious escape, assault with intent to commit murder, attempted burglary, malicious stabbing, armed robbery, bank robbery, and conspiracy to commit bank robbery. Jones did not contest the district court's assessment that at least three of his prior offenses were "violent felon[ies]," as that term is used in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Accordingly, Jones was sentenced as an armed career criminal, which triggered a 15-year statutory minimum sentence. *See id.* All told, Jones was ordered to serve 188 months in prison followed by three years of supervised release.

After a lengthy prison term, Jones began his three-year supervised release term. But less than six months later, Jones shot a man he believed had been a witness against him in the 2003 case. Following his arrest, Jones confessed to the shooting. With the assistance of appointed counsel, Jones pleaded guilty, once again, to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). And following Jones's plea, the probation office petitioned the district court to revoke Jones's supervised release on account of his felon-in-possession charge and his attempt to murder a supposed witness.

For reasons that are not entirely clear, Jones began to doubt his counsel's performance. Not long after his plea, Jones sent a letter to the district court requesting new counsel. At a hearing to address his request, however, Jones stated that he no longer wished to change counsel. In the run up to sentencing, Jones sent another letter to the court requesting new counsel. In the letter, Jones suggested that his counsel was neither communicating with him nor adequately preparing for his sentencing hearing. Again, the district court held a hearing. Jones's counsel stated that she had resolved all of Jones's concerns, describing in detail the steps she had taken to prepare for

Jones's sentencing hearing. Both Jones's counsel and the court asked Jones if he had any remaining issues. He did not. So the district court struck Jones's request for new counsel.

The case proceeded to sentencing. The government filed a memorandum arguing that Jones should be sentenced as an armed career criminal, as he was in 2003. Although the Armed Career Criminal Act requires only three qualifying convictions, the government identified four: (1) a 1967 Tennessee conviction for assault with intent to murder, (2) a 1974 Tennessee conviction for malicious stabbing, (3) a 1976 Tennessee conviction for armed robbery, and (4) a 1977 federal conviction for armed bank robbery. If classified as an armed career criminal, Jones would face a statutory minimum 15-year sentence. *See* 18 U.S.C. § 924(e)(1).

Jones objected to the classification. Initially, in his response to the presentence report, he made two arguments. One, that the government failed to provide sufficient evidence that he was the "James Jones" convicted of malicious stabbing in 1974. And two, that his 1976 Tennessee armed robbery conviction was not a "violent felony" as that term is used in the Armed Career Criminal Act. Jones's sentencing hearing would prove to be eventful.

At one point during the discussion of his prior offenses, Jones departed the courtroom after telling the court that he was "fed up with crap" and "you can have this damn show." At another point, Jones, through his counsel, withdrew his objection to the armed robbery conviction, leaving only his challenge to the malicious stabbing conviction. For that conviction, the district court concluded that the government had provided sufficient evidence that the "James Jones" convicted of malicious stabbing was indeed our James Jones. This, along with his convictions for armed robbery, assault with intent to murder, and bank robbery, constituted four qualifying "violent felonies."

3

Having deemed Jones an armed career criminal, the court re-calculated his Guidelines range as 188 to 235 months. The government moved for a downward departure below the 15-year mandatory minimum based on assistance Jones had provided in an unrelated case, and Jones moved for a downward variance based on his age and medical condition. The district court granted the government's motion but denied Jones's, resulting in an adjusted Guidelines range of 151 to 188 months. After discussing Jones's age, medical condition, and criminal history as well as his assistance to the government, the court settled on a within-Guidelines sentence of 160 months.

The district court then turned to Jones's violation of the terms of his supervised release. The revocation petition prepared by the probation office recommended a Guidelines range of 51 to 63 months' imprisonment but noted that the statutory maximum sentence for the violation was five years. During the hearing, the district court referenced the petition and ensured that Jones was aware of its contents. Following a brief recess to allow Jones time to review the document with his attorney, Jones conceded that he violated the terms of his supervised release when he shot the man he believed to be a witness against him. He requested that his revocation sentence run concurrently with his sentence for his new § 922(g) offense, but acknowledged that the Guidelines recommend that revocation sentences be imposed consecutively to underlying substantive offenses. *See* U.S.S.G. § 7B1.3(f). At no point did Jones contest the petition's recommended Guidelines calculation. The district court ultimately imposed a sentence of 60 months for the supervised release violation and ordered that it run consecutively to Jones's 160-month sentence for the firearm offense. This appeal followed.

## ANALYSIS

Jones raises three issues on appeal. First, that the district court abused its discretion by declining to appoint new counsel. Second, that the district court, in entering Jones's sentence for

4

his § 922(g) violation, erred in classifying Jones as an armed career criminal. And third, that the district court, in imposing Jones's revocation sentence, committed procedural error.

*Jones's Requests To Substitute Counsel.* In evaluating whether the district court should have appointed Jones new counsel, we begin with two bedrock Sixth Amendment principles. One, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Two, a defendant unable to afford counsel is entitled to appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 343-44 (1963). That said, "[a]n indigent defendant has no right to have a particular attorney represent him." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990); *see also Luis v. United States*, 578 U.S. 5, 12 (2016). So once counsel has been appointed, a defendant "must demonstrate 'good cause' to warrant substitution of counsel." *Iles*, 906 F.2d at 1130.

We review a district court's decision to decline to substitute counsel for abuse of discretion. *United States v. Steele*, 919 F.3d 965, 973 (6th Cir. 2019). In making that assessment, we consider: (1) the timeliness of the defendant's request, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the defendant and his attorney, and (4) the balance between these factors and the public's interest in the prompt and efficient administration of justice. *Id.* "An abuse of discretion occurs where the district court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009) (quotation marks omitted).

1. Jones identifies two instances in which he believes the district court erred in declining to appoint new counsel.

The first is when he sent a letter to the court to complain about his counsel's lack of communication and her purported failure to prepare for Jones's upcoming sentencing hearing.

The government does not argue that this request was untimely. So we turn to the remaining factors, starting with the adequacy of the district court's inquiry. Once Jones brought his dissatisfaction to the court's attention, the court was obliged "to inquire into the source and nature of the dissatisfaction." *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017). And it did just that. The court held a hearing the week after it received Jones's letter. At the hearing, the court asked Jones's counsel to explain what she had done to remedy Jones's concerns. Following her explanation, counsel asked Jones to "correct [her] if [she was] wrong." Jones was given an opportunity to do so but offered no objection to his attorney's explanation, nor did he raise further concerns regarding her performance. Nothing more was required of the district court. *See United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011) (explaining that a district court need only allow the defendant an "opportunity to explain the attorney-client conflict as he perceives it").

Now consider the extent of the conflict. Jones's letter complained that his attorney was neither communicating with him nor procuring documents he believed were necessary to challenge portions of his presentence report. But those concerns seem to have been resolved in short order. Jones's counsel explained at the aforementioned hearing that she had "resolved Mr. Jones'[s] outstanding issues" and expected to have all relevant records "well in advance" of his sentencing date. As Jones did not dispute this explanation, we see no reason to upset the district court's conclusion that Jones's counsel addressed his concerns.

That leaves the public interest, which also weighs against Jones. New counsel would have needed time to familiarize herself with Jones's case, likely requiring a continuance. And by the time the district court received Jones's first letter, the date for Jones's sentencing hearing had already been reset twice. These facts, from a public interest perspective, cut against substitution. *See United States v. Trevino*, 7 F.4th 414, 429 (6th Cir. 2021). And as Jones's showing on the first

6

three factors is relatively weak, there is little to suggest that an abuse of discretion occurred here. *See United States v. Chambers*, 441 F.3d 438, 447–48 (6th Cir. 2006).

2.  At his sentencing hearing, Jones again raised concerns about his counsel's performance. He told the court he had "differences" with his counsel over their strategy for challenging Jones's presentence report.  Later, he interrupted the government's attorney to encourage his counsel to contest the report's accuracy more vigorously.

Here too, the district court did not err in denying Jones new counsel.  To begin, Jones's statements at his sentencing hearing were untimely.  *See United States v. Nelson*, 238 F. App'x 65, 73 (6th Cir. 2007); *cf. Steele*, 919 F.3d at 974 (holding that a request for substitution of counsel made in the midst of trial is untimely).  Nor was their substance compelling. While Jones's comments, to be sure, suggested some disagreement with his counsel, "at no point did [he] try to fire counsel, ask for new counsel, or suggest that he wished to conduct his own defense."  *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001) (quotation marks omitted); *see also Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008) (explaining that "judicial inquiry is triggered" only when the defendant formally apprises the court of his desire to change counsel).

For much the same reason, the extent of the apparent conflict also weighed against substitution.  A difference of opinion over litigation strategy, as was the case here, is not the "complete breakdown of communication" that warrants changing counsel.  *Marrero*, 651 F.3d at 466.  What is more, changing counsel in the middle of Jones's sentencing hearing would have further delayed the proceedings, a reality at odds with the public's interest in the prompt administration of justice.  With all four factors regarding substitution weighing against Jones, no abuse of discretion occurred.

*ACCA Enhancement.* An individual who possesses a firearm and has three prior convictions "for a violent felony" is considered an armed career criminal and subject to a 15-year mandatory minimum sentence. 18 U.S.C. § 924(e)(1). The district court deemed Jones an armed career criminal based on his prior Tennessee convictions for (1) armed robbery, (2) malicious stabbing, and (3) assault with intent to commit murder, and his prior federal conviction for (4) armed bank robbery. On appeal, Jones challenges only the first two predicate convictions: armed robbery and malicious stabbing. Jones prevails only if neither offense qualifies as a "violent felony."

We start and end with the armed robbery conviction. At the time of Jones's conviction, Tennessee's robbery statute prohibited "the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear." Tenn. Code. Ann. § 39-3901 (1974) (repealed). Jones argues this conviction was not a "violent felony" for ACCA purposes because a "violent felony" requires an intentional mens rea, yet a defendant could be convicted under the Tennessee statute, Jones says, with a mens rea of recklessness. *See Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (reading "violent felony" to require more than recklessness). Relatedly, he contends that the term "fear" as used in the Tennessee robbery statute is broader than the generic definition.

Jones runs into strong headwinds right from the start because he agreed with the district court's classification of his armed robbery as an ACCA predicate offense. *See United States v. Aparco-Centano*, 280 F.3d 1084, 1087–88 (6th Cir. 2002) (explaining that a party waives appellate review when they agree in open court with the district court's conclusion). At his sentencing hearing, Jones twice stated that he was "not making an argument" on or "objecting to . . . the armed robbery with a deadly [weapon] predicate[]." As Jones "explicitly agreed" with the district court's

classification of his armed robbery offense, we customarily would not allow him to raise the issue on appeal. *United States v. Mabee*, 765 F.3d 666, 671 (6th Cir. 2014) (citation omitted).

Nor, in any event, would Jones prevail. Had Jones merely failed to object to the district court's conclusion, then the plain error standard would apply. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). That means Jones would need to show (1) an error (2) that was clear, (3) affected his substantial rights, and (4) affected the fairness, integrity, or public reputation of his sentencing. *Id.* at 386. Because the district court's decision was consistent with our precedent, Jones could not show plain error. *United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining that an error is not plain unless "clear under current law"). To that end, we held in *United States v. Mitchell* that Tennessee robbery, as that offense was defined at the time of Jones's conviction, categorically qualifies as a violent felony. 743 F.3d 1054, 1058–61 (6th Cir. 2014) (explaining that Tennessee robbery, as defined in 1976, was "a crime of intent" and reading "fear" to categorically match the federal term "violent felony"). Jones questions the validity of *Mitchell* in light of intervening decisions from the Supreme Court, but "reasonable dispute" over a decision's vitality is insufficient to establish plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

For these reasons, Jones had committed at least three ACCA "violent felon[ies]" at the time of sentencing, justifying a mandatory 15-year minimum sentence. 18 U.S.C. § 924(e)(1).

*Revocation Sentence.* Lastly, Jones challenges his revocation sentence as procedurally unreasonable. In that respect, he says three errors occurred. First, the district court did not address the 18 U.S.C. § 3553(a) factors when it imposed his revocation sentence. Second, the district court failed to adequately explain its reasons for imposing a consecutive, rather than concurrent, revocation sentence. Third, the district court did not state on the record the applicable Guidelines

range.  Here again, Jones did not raise any of these arguments in the district court.  So we review them for plain error.  *Vonner*, 516 F.3d at 385–86.  That means Jones must show both that the purported errors were obvious and that they affected his substantial rights and the integrity of his sentencing.  *Id.* at 386.

Even assuming, for sake of argument, that the district court's actions were obviously erroneous, those supposed errors did not affect Jones's substantial rights.  *See United States v. Gabbard*, 586 F.3d 1046, 1051 (6th Cir. 2009).  To make that showing, Jones must demonstrate "a reasonable probability that, but for the error, [he] would have received a more favorable sentence."  *United States v. Wilson*, 614 F.3d 219, 223–24 (6th Cir. 2010) (collecting cases).  But one struggles to see how he could show either that his revocation sentence would have been shorter or that it would have been imposed concurrently absent these purported errors.

Jones's supervised release was revoked primarily because, as he conceded, he shot a man he believed was a witness against him.  Although the district court did not explicitly address the § 3553(a) factors when it imposed Jones's revocation sentence, it discussed them at length when it imposed the sentence for his § 922(g)(1) offense.  There, the court addressed Jones's age and medical condition and credited him for assisting the government in an unrelated case.  It also examined his criminal history and the particularly violent nature of his most recent shooting offense.  The court emphasized that Jones's life "paints a very clear picture of someone who resorts to violence and threats without hesitation."  Jones fails to explain why these same considerations would not also support his 60-month revocation sentence.  *See* 18 U.S.C. § 3583(e)(3) (providing that the length of a revocation sentence is governed by the factors listed in § 3553(a)).

Jones also fails to explain why he would have received a shorter sentence had the district court stated on the record the applicable Guidelines range for his revocation sentence.

The revocation petition, which the court and parties discussed at length at the sentencing hearing, included a recommended Guidelines calculation of 51 to 63 months. No party disputed this calculation. And the district court ultimately imposed a sentence (five years) within that range. True, the court did not specifically reference this recommended calculation when it imposed the sentence. That said, Jones provides no reason to believe that his sentence would have been more lenient had the court done so.

Much the same is true for the district court's decision to impose Jones's revocation sentence consecutively. Understandably, Jones would rather have that sentence run concurrently with the sentence for his felon-in-possession charge. But he fails to explain why the district court, had it articulated a rationale for its decision, would have imposed a concurrent sentence rather than the consecutive sentence it did impose. And making that case would have been difficult for Jones, as the applicable Guidelines policy statement recommends applying revocation sentences consecutively. U.S.S.G. § 7B1.3(f); *see also* 18 U.S.C. §§ 3553(a)(4)(B), 3584(b) (instructing district courts to consider applicable policy statements when imposing a revocation sentence). "Because the district court is required to consider the policy statement, [Jones] has no right to be sentenced in a manner inconsistent with the policy statement." *United States v. Rodriguez-Trujillo*, 84 F. App'x 621, 624 (6th Cir. 2003).

Plus, because Jones's sentence was within the range authorized by law and based primarily on his admitted attempt to murder, "there is no basis for concluding that the [sentence] seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 470 (1997) (cleaned up); *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906–08 (2018); *United States v. Page*, 232 F.3d 536, 544 (6th Cir. 2000) ("[A] sentencing error seriously affects the fairness, integrity, or public reputation of judicial

11

proceedings when a court's error results in imposition of a sentence which is not authorized by law.").

\* \* \*

For the reasons discussed above, we affirm the judgment of the district court.