NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0280n.06

Case Nos. 25-3533/3534

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 29, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| FREDDIE SANCHEZ, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: BATCHELDER, MOORE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Freddie Sanchez was convicted of trafficking multiple kilograms of cocaine. On appeal, he argues the district court should have excluded certain evidence of his drug activities, assigned him a new lawyer before trial, and granted his motion for acquittal because the government presented insufficient evidence at trial. He also claims the district court handed down an unreasonable sentence. All those arguments fail, so we affirm.

I.

A.

A few years ago, a drug investigation led federal officers to Freddie Sanchez. That investigation initially focused on a drug dealer named Justin Stanley. While officers were surveilling Stanley, they intercepted messages from his Snapchat account, which he used to coordinate drug deals. In July 2022, an account associated with a woman named Maria Cruz sent a message to Stanley's Snapchat account with an address—"3321 Estelle Avenue, Lorain, Ohio."

R. 116, Pg. ID 1338. Officers later learned that Cruz was dating Sanchez, and they both lived at that Estelle Avenue address.

The investigation then revealed more connections between Sanchez and Stanley. During a recorded meeting at his home in July, Stanley told a confidential informant that he spent time with his cocaine supplier in prison and that his name was "Sanchez." *Id.* at 1351–52. The officers later confirmed that Sanchez and Stanley had stayed in the same prison unit. What's more, multiple sources informed officers that Sanchez was packaging drugs at his Estelle Avenue home.

So over the next couple months, officers started surveilling Sanchez's residence. The officers repeatedly searched Sanchez's garbage, recovering at least seven plastic baggies with cut corners. Based on their experience, the officers believed the missing corners suggested Sanchez was engaged in drug activity. That's because dealers often use the corners of plastic bags to package small quantities of drugs—and then throw away the rest of the bags. Officers eventually confirmed that three of the baggies contained cocaine, heroin, and fentanyl residue. They also found a bottle of a powder that dealers often use to dilute drugs.

Meanwhile, on August 25, the confidential informant returned to Stanley's home for a controlled buy. This time, both Stanley and Sanchez were involved. Using a pole camera, officers recorded Sanchez arriving at Stanley's home. Soon after, Stanley sent the confidential informant a Snapchat message suggesting that he now had cocaine to sell him. So the confidential informant drove to Stanley's house and purchased 126.3 grams of cocaine. Officers recorded the transaction and heard Stanley, Sanchez, and the confidential informant discussing drug trafficking. Among other things, Sanchez told the confidential informant that his customers liked a "dog fetty mix"—heroin mixed with fentanyl. *Id.* at 1363. Sanchez also boasted that he provided his father

and all his uncles with drugs. And he hoped that his children's mother would help him find more customers.

After this drug deal, investigators began tracking Sanchez's movements, including by placing a GPS tracker on his car and following his cell phone's position. They caught Sanchez near Stanley's residence at least four more times over the next month.

Officers also learned that a package containing a kilogram of cocaine was being delivered to 3321 Estelle Avenue. After delivery failed, the package went back to the local post office. Postal inspectors flagged another similar suspicious package at the post office addressed to "Mike Seabold" at 3327 Camden Avenue. R. 117, Pg. ID 1658. So officers obtained a warrant to search both packages. They confirmed that each package contained a little over one kilogram of cocaine.

Rather than seize the drugs, the officers decided to perform a controlled delivery. They put a small sample of the cocaine back into the Camden Avenue package along with a GPS tracker and closed it up. That afternoon, an undercover officer dressed up as a letter carrier and delivered the package to the Camden Avenue address around 5:30 PM. Minutes after the package was delivered, a man named Akeem Stafford picked it up and drove away. Officers chased him and eventually arrested him.

While this was happening, Sanchez was trying to track down the packages. After the failed delivery, Sanchez spent the morning calling Stafford and then drove to the post office himself at around 5:00 PM. Once there, he talked to Stafford again on the phone, this time for over eight minutes. Sanchez tried calling Stafford one more time at 5:52 PM, but Stafford didn't answer because he had already been detained. Sanchez then left the post office and parked near the area where Stafford had been caught by the police, presumably watching the arrest.

When they arrested Stafford, officers recovered two cell phones from his vehicle. A search of those phones revealed Sanchez's efforts to coordinate delivery of the drugs with Stafford and another associate. That associate had texted Stafford "if u got a spot for [the drugs] to come by mail let me know." *Id.* at 1758. Stafford asked for a phone number so he could "send [him] the addy," and the associate sent him a number. *Id.* at 1759. Right away, Stafford placed a short call to Sanchez. And immediately following that call, Sanchez texted Stafford an address—"3327 Camden Avenue"—which Stafford forwarded to his associate along with the name "Mike Seabold." *Id.* at 1760. That's the same name and address the drugs were ultimately sent to.

B.

As a result of this conduct, a grand jury in the Northern District of Ohio charged Sanchez with possessing cocaine with the intent to distribute it on or around September 15, 2022. It also charged him with conspiring with Stafford and others to commit that offense. According to the indictment, that conspiracy lasted from August 15 to September 15, 2022.

As he prepared for trial, Sanchez's counsel objected to the introduction of evidence about the Stanley investigation, including the Snapchat message with the Estelle Avenue address and recordings of the meetings with the confidential informant. But the district court overruled his objections.

Just two weeks before trial, Sanchez's counsel moved to withdraw. Counsel explained that he had refused to file a suppression motion that Sanchez requested because he viewed it as frivolous. But Sanchez believed counsel was required to file any motions Sanchez wanted. So counsel indicated that his communication with Sanchez had "deteriorated." R. 70, Pg. ID 286. In fact, Sanchez told counsel that he "no longer needed [his] legal services." *Id.*

At a hearing on the withdrawal motion, the district court observed that Sanchez had already sent a letter directly to the court requesting new counsel. Shortly thereafter, Sanchez had again written to the court asking it to suppress the evidence of the drugs from the mailed packages. That letter claimed the warrant to search the packages was defective because it was signed by a retired judge.

The district court first explained to Sanchez that his proposed motion was frivolous. While the judge who approved the warrant was indeed retired, she had been recalled to active status. So that judge had properly approved the warrant. The district court also observed that Sanchez had already been told the judge was active and thus knew his motion was frivolous. Next, the court granted counsel's motion to withdraw as *retained* counsel. But after counsel affirmed that he could still zealously represent Sanchez, the court *appointed* him as court-provided counsel. The district court also explained to Sanchez that counsel wasn't required to do everything he asked, including filing frivolous motions.

Sanchez's case proceeded to trial, and a jury convicted him of all counts. The U.S. Probation Office then prepared a presentence report (PSR). According to the PSR, Sanchez possessed at least two kilograms of cocaine, which meant he had a base offense level of 26 under the Sentencing Guidelines. Because of Sanchez's career-offender status, his total offense level was 34. Adding in Sanchez's criminal-history category of VI, the PSR calculated a Guidelines range of 262 to 327 months' imprisonment.

Sanchez objected to the PSR's finding that he possessed at least two kilograms of cocaine. He contended that the 126.3 grams of cocaine from the controlled buy should be excluded from the calculation. But the district court overruled Sanchez's objection because the controlled buy

was "relevant conduct." R. 119, Pg. ID 2130–31. So the district court agreed with the PSR's Guidelines calculation.

After considering the relevant factors under 18 U.S.C. § 3553(a), the district court imposed a below-Guidelines sentence of 177 months' imprisonment. Because Sanchez committed these crimes while on supervised release, the district court also revoked his term of supervision and sentenced him to an additional 36 months' imprisonment, to be served consecutively. Sanchez timely appealed his conviction and his sentences.

Sanchez raises several arguments on appeal. First, he renews his objection that the district court improperly admitted evidence of drug activities. Second, Sanchez argues the district court erred by refusing to appoint new counsel for him before trial. Third, he asserts that his counsel performed deficiently. Fourth, Sanchez contends there was insufficient evidence to convict him at trial. Finally, he challenges his sentences as procedurally and substantively unreasonable.

II.

Start with Sanchez's evidentiary challenge. He objects to the admission of (1) the Snapchat message Stanley received from Maria Cruz listing the "3321 Estelle Avenue" address, (2) the recordings of the July meeting between Stanley and the confidential informant, (3) the Snapchat conversation between Stanley and the confidential informant before the controlled buy, and (4) evidence of that controlled buy, such as the pole-camera footage showing Sanchez approaching Stanley's house. We review the district court's evidentiary rulings for abuse of discretion. *United States v. Chavez*, 951 F.3d 349, 357–58 (6th Cir. 2020).

Sanchez contends that Federal Rule of Evidence 404(b) bars all this evidence. That rule prohibits the government from introducing evidence of a "crime, wrong, or act"—aside from the charged conduct—to prove that a defendant has a bad character trait and "acted in accordance with

th[at] character" on a particular occasion. Fed. R. Evid. 404(b); *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). In other words, courts can't admit evidence of other bad acts to convince the jury that a defendant acted badly because he's done so before.

But here, none of the challenged evidence implicates Rule 404(b). First, the evidence of the controlled buy helped prove the charged conduct, not Sanchez's character. He was charged with conspiring to traffic drugs between August 15 and September 15, 2022. And the controlled buy—which showed Sanchez and Stanley working together to sell drugs—happened within that period on August 25. So evidence of that transaction, like Stanley's Snapchat message to the confidential informant and the recording of the sale, simply proves the charged conspiracy.

What's more, the evidence from *before* the controlled buy was admissible as relevant background evidence. Background evidence "typically provides context for the jury" by "act[ing] as a prelude to the offense" or by "complet[ing] the story of the offense." *United States v. De Oleo*, 697 F.3d 338, 344 (6th Cir. 2012). As a result, background evidence doesn't implicate Rule 404(b)'s general restrictions on admitting evidence of "other acts." *United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005). That exception applies here.

The challenged evidence counts as background evidence because it provides important context for why the police were investigating Sanchez in the first place. The officers' investigation originally centered on Stanley's drug dealing. They turned to Sanchez only after the challenged evidence—including the message with Sanchez's address—clearly implicated him. Introducing the evidence about the investigation into Stanley's drug dealing "complete[d] the story" of the officers' investigation of Sanchez and explained to the jury why they searched his trash, tracked his car, and monitored his mail. *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) (noting

that the prosecution may introduce "preceding or contemporaneous acts that are incidental but necessary to telling a cogent story"). So the district court properly admitted the evidence.

Sanchez also argues that all this evidence should have been excluded under Federal Rule of Evidence 403. Rule 403 allows a court to exclude evidence "if its probative value is substantially outweighed by a danger" of causing "unfair prejudice." Fed. R. Evid. 403. That argument also fails.

The challenged evidence was highly probative—it demonstrated that Sanchez and Stanley were conspiring to sell drugs. And Sanchez hasn't shown how the evidence caused any unfair prejudice. Evidence may be unfairly prejudicial if it has an "undue tendency to suggest decision on an improper basis." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quotation omitted). To identify an improper basis, Sanchez again argues the challenged evidence would have spoken only to his bad character. But this evidence established the ongoing conspiracy, not Sanchez's character. What's more, the district court issued a limiting instruction directing the jury not to consider any of the challenged facts as evidence of Sanchez's character. And we presume that juries follow appropriate limiting instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). So Sanchez can't show that any danger of unfair prejudice substantially outweighed the probative value of the evidence. That means his Rule 403 challenge fails, and the district court didn't abuse its discretion in admitting the evidence.

III.

A.

Sanchez next argues that the district court erred by effectively denying his motion for new counsel. The district court allowed Sanchez's counsel to withdraw as his retained attorney but then immediately appointed that same attorney as court-provided counsel. Sanchez believes the

court should have appointed someone else to represent him instead, and its refusal to do so denied him his Sixth Amendment right to "assistance of counsel of [his] choice." Appellant's Br. at 27.

But the Sixth Amendment guarantees a criminal defendant the right to "competent court-appointed counsel," *not* the right to counsel of his "choosing or liking." *Karacson v. Shaver*, 176 F.4th 525, 532 (6th Cir. 2026). That means a defendant must demonstrate "good cause" to justify a change in appointed counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). We review a district court's decision whether such cause existed for abuse of discretion. *United States v. Mack*, 258 F.3d 548, 555–56 (6th Cir. 2001). To determine if the district court abused its discretion, we often consider four factors: (1) the timeliness of the request for new counsel, (2) "the adequacy of the court's inquiry," (3) whether the level of conflict between the attorney and client "was so great that it resulted in a total lack of communication preventing an adequate defense," and (4) how those factors balance against the public interest in the "efficient administration of justice." *Id.* at 556. Taken together, those factors support the district court's decision to deny Sanchez's motion.

Start with timeliness. Counsel moved to withdraw just two weeks before trial. We've repeatedly indicated that requests for new counsel filed two weeks before trial aren't timely. *See, e.g.*, *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999); *United States v. Trevino*, 7 F.4th 414, 429 (6th Cir. 2021). But Sanchez himself sent a letter to the district court five weeks before trial asking for new counsel. Once that letter made Sanchez's "dissatisfaction known," the district court was required to inquire into the nature of the conflict. *United States v. Powell*, 847 F.3d 760, 778–79 (6th Cir. 2017). And five weeks is a closer call on timeliness. *Contrast id.* (finding a motion made three weeks before trial timely), *with United States v. Chambers*, 441 F.3d 438,

447 (6th Cir. 2006) (finding a motion made one and a half months before trial in a slow-moving litigation untimely). So this factor doesn't support either side.

Next, the district court adequately inquired into the nature of Sanchez's conflict with his attorney. To meet this requirement, a district court need only "allow [the] defendant the opportunity to explain the attorney-client conflict as he perceives it." *Powell*, 847 F.3d at 779 (quotation omitted). Here, the district court asked Sanchez about the cause of the conflict. Sanchez explained that he thought his counsel was required "to do his duty" and file motions that Sanchez requested. R. 114-1, Pg. ID 1593. Counsel also confirmed that a disagreement about filing motions had caused the conflict. The court then clarified to Sanchez that his counsel wasn't permitted to file frivolous motions. The court even explained that Sanchez's desired motion—challenging the status of the judge who signed the search warrant—was frivolous. Finally, the district court concluded its inquiry by asking Sanchez if there was "anything more you think we should discuss," and Sanchez said no. *Id.* at 1611. That careful inquiry into Sanchez's conflict with his counsel supports the court's decision.

What's more, the attorney-client conflict didn't amount to a "total lack of communication" that "prevent[ed] an adequate defense." *Mack*, 258 F.3d at 556. Counsel reported that while preparing for trial, he arranged weekly phone calls with Sanchez. When Sanchez requested that he file various motions, counsel explored them and explained to Sanchez why they were frivolous. In particular, counsel had already told Sanchez his requested suppression motion lacked merit because the judge who signed the warrant was a recalled judge back on active status. So far from a "total lack of communication," the record shows that counsel remained in close contact with Sanchez leading up to the withdrawal hearing. And counsel affirmed that he could "stand at

[Sanchez's] side and zealously represent him" going forward. R. 114-1, Pg. ID 1606. This factor also supports the district court's refusal to appoint new counsel.

Finally, keeping Sanchez's original counsel promoted the efficient administration of justice. Sanchez's counsel had already represented him for nearly two years by the time of the hearing. A new attorney would have needed significant time to get up to speed on the case. *See United States v. Daniels*, 163 F.4th 992, 1003 (6th Cir. 2026). And Sanchez said he still "definitely" wanted to go to trial. R. 114-1, Pg. ID 1606. Refusing to appoint different counsel thus prevented additional delays to the resolution of Sanchez's case.

On balance, these factors support the district court's decision. And that means the district court didn't abuse its discretion by declining to appoint new counsel.

B.

Sanchez also argues that his counsel was constitutionally ineffective. But we typically don't review ineffective-assistance claims on direct appeal. *See United States v. Erker*, 129 F.4th 966, 980 (6th Cir. 2025). That's because such claims are better suited for postconviction proceedings, which permit more factual development about counsel's performance. *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006). Granted, we review ineffective-assistance claims on direct appeal "in rare cases where the error is apparent from the existing record." *Id.* Yet Sanchez identifies no such error here. He vaguely points to motions that his counsel could have filed, but he doesn't show why those motions would have succeeded—or why failing to file them made counsel constitutionally ineffective. So we decline to review Sanchez's ineffective-assistance claim on direct appeal.

IV.

In addition to his procedural challenges, Sanchez argues there wasn't sufficient evidence to convict him of (1) conspiring to possess cocaine with intent to distribute and (2) possessing cocaine with intent to distribute it.

To preserve a challenge to the sufficiency of the evidence, a defendant must move for acquittal both "at the end of the prosecution's case-in-chief *and* at the close of evidence." *United States v. Raymore*, 965 F.3d 475, 484 (6th Cir. 2020) (emphasis in original) (quotation omitted). After the prosecution's case-in-chief, Sanchez met the first requirement by reserving his right to move for acquittal. But then, after the close of evidence, he moved for acquittal only on count two—the possession charge. So he preserved his sufficiency challenge for that count only.

For preserved sufficiency challenges, we reverse only if no rational juror could have convicted the defendant. *Chavez*, 951 F.3d at 355. And we review the evidence in the light most favorable to the government. *Id.* Sanchez can't prevail on his challenge to count two under that standard.

A reasonable juror could have convicted Sanchez of possessing cocaine with the intent to distribute it. To convict on that count, the government needed to establish that Sanchez (1) knowingly possessed cocaine and (2) had the intent to distribute it. *United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010). For the first element, physical possession isn't required. *See United States v. Draper*, 888 F.2d 1100, 1103 (6th Cir. 1989). Instead, a defendant can be convicted for "constructive possession" if he knowingly has "the power to exercise a measure of dominion and control" over the drugs "either directly or through others." *Id.*

That's exactly what the evidence showed here. Consider the package of drugs sent to 3321 Estelle Avenue. The government established that Sanchez frequented that address through

testimony that he received mail addressed to him there, phone records showing that Sanchez's cell phone was frequently at that address, and visual police surveillance. Plus, the government presented evidence, such as the baggies with drug residue, that showed Sanchez used that house to package drugs. Evidence at trial also detailed how Sanchez tried to keep tabs on the package sent to that address. Phone records showed Sanchez repeatedly calling and texting Stafford on the day of the delivery. And GPS data revealed that Sanchez drove to the post office the same day. So a reasonable juror could have found that Sanchez directed those drugs to be sent to his address for processing and distribution. *Cf. United States v. Reed*, 163 F.4th 338, 367 (6th Cir. 2025). That would mean Sanchez exercised the "control" necessary for constructive possession.

Likewise, a rational juror could have found that Sanchez constructively possessed the drugs sent to 3327 Camden Avenue. The jury heard that Sanchez talked with Stafford and then texted him the address those drugs were ultimately delivered to—"3327 Camden Avenue." R. 117, Pg. ID 1760. After receiving those directions, Stafford forwarded the address to an associate. Three days later, the local post office received a package of cocaine addressed to that same residence. And Sanchez tried to track down the drugs by driving to the post office and then near the Camden Avenue address. Once again, a reasonable juror could have found that Sanchez controlled those drugs by coordinating the time and location of their delivery. So there was sufficient evidence that he constructively possessed both packages of drugs.

This same evidence also establishes that Sanchez intended to distribute those drugs. The plastic baggies and other drug-dealing paraphernalia showed how Sanchez readied his drugs for distribution. Plus, Sanchez possessed over two kilograms of drugs—much more than he would need for personal use. That large quantity of drugs also helps establish his intent to distribute. *See*

*United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995). Thus, a reasonable juror could have found both elements of possession with intent to distribute.

What's more, even if Sanchez exercised control over just one of the packages, that would suffice to sustain the conviction. That's because the government needed to prove only that Sanchez possessed 500 grams or more of cocaine with intent to distribute it. And each package contained around a kilogram of cocaine. Therefore, a rational juror could have convicted Sanchez even if he possessed only one package with intent to distribute.

Now turn to the conspiracy count. Because Sanchez didn't renew his sufficiency challenge for this count, we reverse only if "the record is devoid of evidence pointing to guilt." *United States v. Kuehne*, 547 F.3d 667, 697 (6th Cir. 2008) (quotation omitted). The record here isn't devoid of evidence that Sanchez conspired to possess and distribute cocaine.

To prove this charge, the government needed to show that (1) there was an agreement to violate the drug laws, (2) Sanchez had the knowledge and intent to join the conspiracy, and (3) he participated in the conspiracy. *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). To establish an agreement, a "tacit or material understanding" among conspirators suffices. *United States v. Beals*, 698 F.3d 248, 259 (6th Cir. 2012). Record evidence supports all these prongs.

Here, the government introduced text messages showing that Sanchez, Stafford, and another dealer coordinated a drug delivery together. That's strong evidence that they had an agreement to violate drug laws. *Cf. United States v. Matthews*, 31 F.4th 436, 452 (6th Cir. 2022). Those text messages—along with Sanchez's attempts to use an address he frequented to receive drugs and then to track down those drugs on the day of the delivery—also establish Sanchez's intent to join and his participation in the conspiracy. Additionally, the government introduced evidence of Sanchez's conspiring with Stanley to traffic drugs, including the recording of Sanchez

and Stanley selling drugs together in the same home. So there's enough evidence to show Sanchez participated in a drug-trafficking conspiracy.

In short, both of Sanchez's challenges to the sufficiency of the evidence fail.

V.

Finally, Sanchez challenges his sentences for drug trafficking and violating his supervised release as procedurally and substantively unreasonable.

A.

Start with Sanchez's procedural-reasonableness challenges. A sentence is procedurally unreasonable if, for example, the district court improperly calculated the defendant's Guidelines range, failed to consider the § 3553(a) factors, or failed to explain its chosen sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

First, Sanchez believes the district court used the wrong base offense level for his drug-trafficking sentence by attributing too much drug weight to him. Specifically, Sanchez contends that the district court incorrectly included the 126.3 grams sold to the confidential informant when calculating his Guidelines range. According to Sanchez, that addition pushed his base level from 24 to 26. Sanchez raised this objection before the district court. We review the district court's drug-quantity determination for clear error. *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010). And we find none.

The district court didn't err when it calculated Sanchez's base offense level. For starters, the confidential informant's drug buy was part of Sanchez's conspiracy to sell drugs with Stanley. So the 126.3 grams sold at that buy qualifies as relevant conduct for calculating Sanchez's offense level. *See* U.S.S.G. § 1B1.3(a)(1)(B). What's more, even if the district court didn't count the 126.3 grams, a base level of 26 still applied because Sanchez also constructively possessed both

packages of drugs sent through the mail. Those packages combined contained over two kilograms of cocaine. And under the Guidelines, a base offense level of 26 applies to a defendant who possesses at least two kilograms but less than 3.5 kilograms of cocaine. *Id.* § 2D1.1(c)(7). So the district court didn't improperly calculate Sanchez's base offense level.

Second, Sanchez contends that his term of imprisonment imposed upon revocation of his supervised release was "arbitrary" because the district court didn't consider the § 3553(a) factors. Appellant's Br. at 38. Though Sanchez frames this as a substantive-reasonableness challenge, arguing that the district court "fail[ed] to consider the §3553(a) factors" is actually a procedural-reasonableness challenge. *Gall*, 552 U.S. at 51. That's because it concerns "the method by which the court arrives at the sentence." *United States v. Snelling*, 768 F.3d 509, 512 (6th Cir. 2014). So this argument goes to procedural reasonableness.

Sanchez didn't object on this basis in the district court. Indeed, when asked how the district court could "improve the sentence," Sanchez's counsel replied that he had "no objection to the way the Court formulated its sentence." R. 119, Pg. ID 2178; *see United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). So we review this argument for plain error. *United States v. Marsh*, 95 F.4th 464, 470 (6th Cir. 2024). Plain error exists only if the district court committed a clear or obvious error that affected a defendant's substantial rights as well as the fairness, integrity, or public reputation of the proceedings. *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020). There's no such error here.

In the first place, the district court told the parties that it had considered "all of the appropriate [§] 3553(a) factors." R. 119, Pg. ID 2174. That already undercuts Sanchez's argument that the imposition was "arbitrary." In addition, the district court seemed to consider three specific § 3553(a) factors in imposing a consecutive 36-month term of imprisonment. For instance, the

court noted that it chose 36 months because "it sends the right message." *Id.* at 2163. That speaks to the district court's attempt to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The district court then emphasized that it would run the 36-month term consecutively "out of respect for every other person." R. 119, Pg. ID 2163. That reference to "others" seems to reflect the district court's intent to protect the public. 18 U.S.C. § 3553(a)(2)(C). Finally, it noted that its sentence was "responsive, best to [Sanchez's] condition." R. 119, Pg. ID 2174. That appears to refer to the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Taken together, the district court directly related multiple relevant § 3553(a) factors to its chosen term of imprisonment.

While it's true the district court didn't explicitly discuss every § 3553(a) factor, it wasn't required to do so. *United States v. Messersmith*, 164 F.4th 523, 528 (6th Cir. 2026). And even if the court could have explained its choice more comprehensively, Sanchez hasn't shown that it clearly or obviously failed to consider the § 3553(a) factors. So Sanchez hasn't established plain error.

Sanchez's procedural-reasonableness challenges fail.

B.

Sanchez also claims his 177-month sentence for his drug convictions was substantively unreasonable because the district court didn't sufficiently consider the potential sentencing disparity between him and his co-defendant, Stafford. Sanchez frames this argument in terms of procedural reasonableness. But arguments that a district court didn't give enough weight to a § 3553(a) factor—like sentencing disparities—are actually challenges to a sentence's substantive reasonableness. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019); *see* 18 U.S.C.

§ 3553(a)(6). We review substantive-reasonableness challenges for abuse of discretion. *United States v. Richards*, 164 F.4th 508, 522 (6th Cir. 2026).

The district court didn't abuse its discretion in giving Sanchez a longer sentence than Stafford. It's true that Stafford received only 77 months' imprisonment compared to Sanchez's 177 months. But district courts have discretion to give co-defendants different sentences. After all, § 3553(a)(6) concerns only "national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). It doesn't focus on the disparities between two co-defendants. *Id.*

Even if § 3553(a)(6) did pertain to co-defendants, the district court had plenty of reason to give Sanchez and Stafford different sentences. Sanchez went to trial and was convicted, whereas Stafford took a plea deal that included a lower base offense level. What's more, Sanchez was a career offender; Stafford wasn't. So Sanchez's Guidelines range was 262 to 327 months compared to Stafford's range of 92 to 115 months. Thus, it makes sense that Sanchez would have a much longer sentence than Stafford. In short, the district court didn't abuse its discretion by sentencing Sanchez to 177 months—well below his Guidelines range.[1]

\* \* \*

We affirm.

---

[1] If Sanchez's argument is that the district court failed to consider sentencing disparities at all under § 3553(a)(6)—a *procedural* error—that argument would fail too. The district court here did consider "sentencing disparity." R. 119, Pg. ID 2161.